IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

THOMAS CIENIEWICZ,

    Plaintiff,

v.

GHAFOURPOUR, DDS, ET AL.,

    Defendants.

Civil Action No: 1:22cv172

# MOTION TO DISMISS COMPLAINT
# BRIEF IN SUPPORT

COME NOW Defendants Wellpath, LLC, Kourosh Ghafourpour DDS, and Alex Taylor MD, by counsel. Pursuant to Rule 12(b)(6) and 12(f) of the *Federal Rules of Civil Procedure*, the Defendants move to dismiss the Complaint. The Defendants state the following in support of their Motion:

1.    This is a lawsuit (ECF Doc. 1) that was filed by Thomas Cieniewicz, *pro se*, on February 17, 2022. In his Complaint, the Plaintiff asserted two (2) claims against the Defendants, which were (i) that his Eight Amendment rights were seriously violated when his "medical needs (toothache)" were not addressed in a timely fashion by the dental and medical departments of the Chesapeake City Jail, causing him grievous bodily harm and a near-death situation, and (ii) that the "set up by the medical dept. to dispense prescription medications is a deliberate indifference to [his] serious medical condition" because the distribution is not timely. The Plaintiff's third claim does not pertain to these Defendants.

**THE AMENDED COMPLAINT DOES NOT CONTAIN SUFFICIENT FACTS OR LEGAL BASES TO SUPPORT A PLAUSIBLE CLAIM AGAINST THE DEFENDANTS UNDER 42 U.S.C. §1983.**

2. The Plaintiff has not asserted sufficient facts or a sufficient legal basis for an individual or vicarious claim of deliberate indifference against the Defendants under 42 U.S.C. §1983.

**Pleading Standard**

3. The United States Supreme Court addressed the federal pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, (i) a complaint must contain sufficient factual assertions and (ii) those factual assertions must state a plausible cause of action. *Iqbal*, 556 U.S. at 677-679.

4. For the factual assertions, while Federal Rule of Civil Procedure 8 requires a short and plain statement of the claim showing that the pleader is entitled to relief and does not require detailed factual allegations, it *does* demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677-678. In addition to Rule 8, plaintiffs are required to adhere to Rules 9 (requiring specific pleading for certain claims) and 11 (requiring an attorney or *pro se* plaintiff to certify that the claims are warranted and have evidentiary support) and courts have the ability to dismiss complaints that fail to state a claim under Rule 12; "the aggregation of these specific requirements reveals the countervailing policy that plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact." *Francis v. Giacomelli*, 588 F.3d 186, 192-193 (4th Cir. 2009). The pleading Rules require more than notice of a claim, they "provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Giacomelli*, 588 F.3d at 192.

5. In analyzing pleadings under the guidance of these Rules, labels, conclusions, and "formulaic recitation[s] of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A claim is not sufficient if it "tenders naked assertions devoid of further factual enhancement." *Id.*

Legal conclusions are not accepted as true and "threadbare recitals of the elements of a cause of action supported by mere conclusory statements" will not suffice. *Id*. In other words, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Giacomelli*, 588 F.3d at 193.

6. A complaint must be dismissed if it is not "plausible on its face". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility of a complaint exists only when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Reasonable inference that the defendant is liable" is more than suggestion, possibility, and conceivability; the argument must be plausible. *Twombly*, 550 U.S. at 570. If a complaint only provides facts that are "merely consistent with a defendant's liability, [the complaint] stops short of the line between possibility and plausibility of entitlement to relief." *Id*. If, after reviewing the Complaint, the Court can only infer the *possibility* of misconduct by the Defendant, then "the complaint has alleged <u>but it has not shown</u> that the pleader is entitled to relief as required by Rule 8". *Giacomelli*, 588 F.3d at 193 (<u>emphasis</u> added).

7. Moreover, if complaints that lack sufficient facts to support a claim are not dismissed by the Court, then Rule 12(b)(6) "would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint." *Brown v. Mitchell*, 308 F.Supp.2d 682, 691 (E.D. Va. 2004).

8. Applying the Court's pleading analysis noted above to the Complaint, the Plaintiff has not pled a cause of action against the Defendants that is justified by both law and fact and that shows that he is entitled to the requested extreme relief.

**CLAIM ONE**

9. To support Claim One, his Eighth Amendment claim regarding delayed treatment for his toothache, the Plaintiff alleged that in early May 2021, he lost a filling out of a molar. ECF Doc. 1, p. 7. He submitted a Health Services Request on May 18, 2021, asking to be seen by dental. *Id*. He was given a 7-day prescription of Tylenol and was told he was on the dental list. *Id*. As his prescriptions ended and his pain increased, he "continued to pester the health care staff, pod deputies…" *Id*. He submitted Health Service Request forms monthly. *Id*. He was placed on a full-time prescription of Tylenol. *Id*. In August or September, he complained at every pill call and Naproxen was added to his Tylenol prescription "to alleviate his pain." *Id*.

10. On November 4, 2021, he became nauseas, was sweating and lost consciousness. ECF Doc. 1, p. 8. EMTs took him in an ambulance to the Chesapeake Regional Medical Center. *Id*. After several tests and scans, it was determined that he had an upper GI bleed and he was admitted to the hospital for a procedure. *Id*. A physician told him that "prolonged ingestion of Naproxin had eaten a hole in [his] duodenum right on a major blood vessel." *Id*. The physician told him that he would have to take protonix for the rest of his life and refrain from eating acidic food and noted "No Naproxin" and "needs to see a dentist immediately" on his paperwork. *Id*. Mr. Cieniewicz's tooth was pulled the next morning. *Id*.

11. These facts do not support a deliberate indifference claim against the Defendants.

12. 42 U.S.C. §1983 governs civil suits for the violation of any rights by state actors and carries a burden that is much higher than a claim for negligence. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). To state a §1983 claim against the Defendants, the Plaintiff must establish the four required elements of a §1983 claim, which are: (i) that these Defendants were state actors, (ii) that the challenged conduct of the Defendants caused Mr. Cieniewicz's claimed injuries, (iii) that Mr. Cieniewicz's alleged harms were, or the deprivation was, "serious," and (iv) that the

Defendants acted with deliberate indifference. *Coppage v. Mann*, 906 F.Supp. 1025, 1035 (E.D. Va. 1995).

13. Proving deliberate indifference is a very high standard and a showing of mere negligence will not meet this standard. *Grayson*, 195 F.3d at 695. An argument that the physician should have made different treatment decisions is not deliberate indifference. To find deliberate indifference, the physician's *actions* must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

14. The Plaintiff cannot support any individual deliberate indifference claims against Drs. Taylor or Ghafourpour because he has not identified any action or inaction of Drs. Taylor and Ghafourpour. There is no basis for the Court to find that Drs. Taylor or Ghafourpour *acted* with deliberate indifference toward Mr. Cieniewicz because there are no "actions" attributable to these Defendants in the Complaint.

15. Despite the failure to identify any actions specific to Drs. Taylor or Ghafourpour, the general facts alleged by the Plaintiff do not support a deliberate indifference claim. The facts alleged show that Mr. Cieniewicz's complaints of dental pain were addressed each time by medical staff with attention, medication, and a referral to dental. These *actions* are not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" and do not qualify as deliberate indifference. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

16. In addition, there are insufficient facts to support the Plaintiff's claim that he objectively had a "serious medical condition" at any particular time that coincided with some interaction with or subjective knowledge of Drs. Taylor and Ghafourpour. A "serious" medical

condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention or if denial of or a delay in treatment causes the inmate to suffer a life-long handicap or permanent loss." *Coppage*, 906 F.Supp. at 1037. A serious medical need is judged with an *objective* standard. *Johnson,* 145 F.3d at 167.

17. There is also no basis for the Court to determine that Drs. Taylor and Ghafourpour had the *mindset* required for a deliberate indifference claim. The decision to act or not act, with the knowledge of a substantial risk, is critical. "Without a deliberate or intentional disregard of the risk, the conduct becomes merely negligent, which fails to satisfy the mens rea required for deliberate indifference." *Anderson v. Kingsley*, 877 F.3d 539 (4th Cir. 2017). It is not an "accidental or inadvertent response to a known risk"; it is a "conscious disregard" of a "known risk of serious harm." *Anderson v. Kingsley*, 877 F.3d 539 (4th Cir. 2017). There are no facts to show that these Defendants "had a sufficiently culpable state of mind…so as to ensure that the deprivation qualifies as a punishment implicating the Eighth Amendment". *Anderson v. Kingsley*, 877 F.3d 539 (4th Cir. 2017).

18. The Plaintiff cannot rely on an allegation of what Drs. Taylor and Ghafourpour should have known or should have done to meet this very high standard. There is a "clear distinction between situations in which the physician provides no medical care, which may amount to deliberate indifference, and those in which the physician provides merely substandard care, which amounts at most to negligence." *Coppage*, 906 F.Supp. at 1038. For example, a misdiagnosis alone or a disagreement with a chosen course of treatment do not qualify as deliberate indifference. *Coppage v. Mann*, 906 F.Supp. 1025, 1040 (E.D. Va. 1995); See *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir.1977) (incorrect diagnosis does not constitute deliberate

indifference) and *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985) (disagreement over treatment plan does not constitute deliberate indifference). The Plaintiff has not alleged any facts regarding the subjective knowledge of Drs. Taylor and Ghafourpour and certainly has not established that they had the mindset required for a deliberate indifference claim.

19. The Plaintiff has "<u>not shown</u> that [he] is entitled to relief" for his claims related to treatment of his dental pain; therefore, he has not met his burden for a deliberate indifference claim against the Defendants. *Giacomelli*, 588 F.3d at 193 (<u>emphasis</u> added).

20. Although his two (2) claims against the Defendants made no reference to the administration of Naproxen, the Plaintiff suggested in the body of the Complaint that the prescription for Naproxen caused his gastrointestinal bleed on November 4, 2021. However, this claim also does not rise to the level of deliberate indifference.

21. There is no allegation of any action or inaction of Drs. Taylor or Ghafourpour related to the Naproxen claim. In addition, a prescription for an over-the-counter pain medication (Naproxen) for a patient who claims to be in pain is not an action that would shock the conscience. According to the Plaintiff's allegations in the Complaint, the Naproxen prescription was given in direct response to Mr. Cieniewicz's complaint of tooth pain. There is no allegation that there was any contraindication for the Naproxen, that the dosage itself was dangerous, or that Mr. Cieniewicz ever expressed any symptoms of a gastrointestinal problem before his sudden symptoms on November 4, 2021. There is also no allegation to show that Drs. Taylor and Ghafourpour had the subjective knowledge or mindset to qualify as a deliberate indifferent claim. There are no facts to show that Drs. Taylor and Ghafourpour had a culpable state of mind, that they made an intentional decision to act knowing that a prescription for Naproxen would pose a substantial risk to Mr. Cieniewicz's health. The Plaintiff simply claims that he was prescribed Naproxen in August or

7

September of 2021, that he suffered a gastrointestinal bleed on November 4, 2021, and that a physician told him that a hole in his duodenum was caused by prolonged ingestion of Naproxen. Moreover, an argument that Drs. Taylor or Ghafourpour should have made different treatment decisions, that they should not have ordered Naproxen or should have entered different orders for Naproxen, is not deliberate indifference. A misdiagnosis alone or a disagreement with a chosen course of treatment does not qualify as deliberate indifference. *Coppage v. Mann*, 906 F.Supp. 1025, 1040 (E.D. Va. 1995).

22. The Plaintiff has "<u>not shown</u> that [he] is entitled to relief" for his claim related to the administration of Naproxen; therefore, he has not met his burden for a deliberate indifference claim against the Defendants. *Giacomelli*, 588 F.3d at 193 (<u>emphasis</u> added).

23. Although it is not clearly expressed in the Complaint, there are no facts in the Complaint to support a vicarious deliberate indifference claim against Wellpath. Wellpath cannot be held vicariously liable for the actions of individual defendants under §1983 based on *respondeat superior*. *Brown v. Mitchell*, 327 F.Supp.2d 615, 629 (E.D. Va. 2004); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Moreover, the Plaintiff has not offered any facts to show the elements of a §1983 claim against Wellpath. *Spell v. McDaniel*, 824 F.2d 1380, 1385-88 (4th Cir. 1987). The Plaintiff has failed to identify any policy or custom, much less a policy or custom attributable to Wellpath; this alone is sufficient for dismissal. The Plaintiff has also failed to show that Wellpath had any official policy that was specific to Mr. Cieniewicz's circumstances and caused him specific harm. The Plaintiff has also failed to allege any facts showing that the constitutional right that was allegedly violated and that the policy itself was the "moving force of the constitutional violation" in this case. *Polk County v. Dodson*, 454

U.S. 312, 326 (1981). Wellpath requests that any §1983 policy or custom claim against it be dismissed with prejudice

## CLAIM TWO

24. In the Complaint, the Plaintiff offered insufficient facts to support Claim Two, his deliberate indifference claim that the medical department generally did not distribute medication timely. Mr. Cieniewicz claimed that medication was dispensed in a "horrific way." ECF Doc. 1, p. 10. There were two (2) main pill calls each day and they usually occurred at 9:00 p.m. and 3:00 a.m., and sometimes at 11:00 p.m. and 2:00 a.m. *Id*. There was no regard for medication that must be taken with food and the pill calls were too close together in time. *Id*. The Plaintiff "is sure that the AMA standards for such things is being totally ignored." Id. The Plaintiff alleged that this was wanton and deliberate indifference to his medical needs and has caused him grievous bodily harm. *Id*. He alleged that it was "substandard care" by Wellpath medical services. *Id*.

25. It appears that the Plaintiff intends to assert Claim Two as an official policy or custom claim; however, these claims must fail.

26. The Plaintiff is improperly seeking to hold Drs. Taylor and Ghafourpour vicariously liable for unnamed actions, unnamed people, and unidentified policies or customs. Because these claims are duplicative of the presumed claim against Wellpath, the claims against Drs. Taylor and Ghafourpour must be dismissed. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).

27. In order to hold Wellpath responsible for a §1983 violation, the Plaintiff must establish that: (i) Wellpath had an official policy or custom of providing unconstitutional medical care; (ii) that this official policy or custom created deliberate indifference to Mr. Cieniewicz's constitutional rights; and, (iii) that this official policy or custom caused Mr. Cieniewicz's allegedly

inadequate medical care. *Spell v. McDaniel*, 824 F.2d 1380, 1385-88 (4th Cir. 1987). However, the Plaintiff has failed to identify any facts to identify any policy or custom, much less a policy or custom attributable to Wellpath, which is cause for dismissal.

28. The Plaintiff is required to identify a specific policy with a specific constitutional deficiency and cannot plead in the abstract. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). The Plaintiff's general claim that the two (2) medication passes were too close in time is not a constitutional claim. The Plaintiff has also failed to show that Wellpath had any official policy that was specific to Mr. Cieniewicz's circumstances and caused him specific harm. In addition, the Plaintiff has failed to allege any facts showing that the constitutional right that was allegedly violated and that the policy itself was the "moving force of the constitutional violation" in this case. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). Because the Plaintiff has only pled threadbare conclusions without factual support, the Defendants request that any perceived §1983 policy or custom claim against the Defendants be dismissed.

29. Because the Plaintiff has not shown that he is entitled to relief as required by Rule 8, the Defendants request that any and all individual and vicarious claims for deliberate indifference against them be dismissed with prejudice. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## THE AFFIDAVITS AND MEDICAL RECORDS SUPPORT DISMISSAL.

30. If the Court will consider information beyond the Complaint in reaching its decision pursuant to Rule 12(d) of the *Federal Rules of Civil Procedure*, the Defendants have attached Affidavits and supporting medical records (**Exhibits A, B and C**) that demonstrate that the Defendants were not deliberately indifferent to a serious medical need.

31. Mr. Cieniewicz was incarcerated at the Jail for 2 years and 8 months, from October 1, 2019 through June 7, 2022. On arrival at the Jail, he did not report any serious medical conditions or current medical symptoms and his exam was normal. He reported back pain and dental pain as a chronic issue.

32. During 2021, Mr. Cieniewicz was seen by medical staff 19 times for various injuries and complaints. Of the 19 visits with medical staff, Mr. Cieniewicz reported dental pain to medical staff on three (3) occasions. On all three occasions, he was seen by medical staff, he was given pain medication to treat his pain, and he was referred to dental. He did not report any additional symptoms with these complaints of dental pain.

33. During the same time period, Mr. Cieniewicz submitted five (5) Healthcare Services Request forms requesting dental care. On each occasion, he was seen by medical staff and, when staff confirmed that he was reporting pain, he was given pain medication and referred to dental. He did not report any additional symptoms with these complaints of dental pain.

34. During the same time period, Mr. Cieniewicz was also seen by medical providers for treatment of specific complaints on five (5) occasions. While he was in the presence of the physicians and other medical providers for these visits, Mr. Cieniewicz did not report any dental pain or complaints.

35. In 2021, Mr. Cieniewicz was seen by a dentist twice. Dr. Ghafourpour saw Mr. Cieniewicz on August 5, 2021 and again on November 9, 2021.

36. In his Affidavit, Dr. Ghafourpour explained that Mr. Cieniewicz's dental pain was caused by a partially fractured tooth and missing portions of a previous filling that left some sensitive dentin exposed. Dr. Ghafourpour was not concerned about the tooth because the displaced portion of the tooth left some remaining filling in the tooth while exposing the sensitive

layer of the dentin and there was no sign or symptom of infected nerve or associated tissues, on examination or x-ray. He believed that the pain that Mr. Cieniewicz reported to medical staff off and on was typical for a patient with exposed sensitive layers of a tooth that is missing a filling. In addition, Mr. Cieniewicz's tooth pain was manageable with the pain medication. Mr. Cieniewicz did not have any serious medical condition related to his dental health, with no reported or examined swelling or infections from odontogenic origin. Dr. Ghafourpour explained that the dental treatment Mr. Cieniewicz received was not delayed and did not cause any exacerbation of any dental condition. He explained that, generally, patients go for many months with similar findings and most people avoid the tooth and protect it from the sensitizing foods or liquids. When Mr. Cieniewicz reported 10/10 pain for the first time in November, Dr. Ghafourpour recommended a root canal and Mr. Cieniewicz chose extraction.

37. It is clear from the records that the Defendants and the medical staff did not ignore any complaints of dental pain from Mr. Cieniewicz and responded timely and appropriately according to the nature of the complaint.

38. In his Affidavit, Dr. Taylor explained that he prescribed Naproxen specifically to address Mr. Cieniewicz's complaint of pain. Over the course of his 2 years and 8 months of incarceration at the Jail, Mr. Cieniewicz reported to providers and/or to medical staff various nonurgent ailments that caused him pain including back pain and work-related injuries. Dr. Taylor prescribed low doses of Tylenol, Ibuprofen, and eventually, Naproxen for Mr. Cieniewicz. The prescriptions were medically indicated, meaning that he had a reasonable and valid medical reason to issue the prescriptions and, because they were to treat his complaints of pain, they were available to him as needed. Mr. Cieniewicz was not required to take them, but he was able to take them when he experienced pain. In fact, Mr. Cieniewicz refused some of the medication.

12

39. Dr. Taylor explained that the risk of stomach ulcers from use of NSAIDs is low. At no time did Dr. Taylor believe that Mr. Cieniewicz had or was at a significant or elevated risk for stomach ulcers from taking NSAIDs. Mr. Cieniewicz did not have risk factors for stomach ulcers, and he did not report, and Dr. Taylor did not find, any signs or symptoms of gastrointestinal problems. Dr. Taylor examined Mr. Cieniewicz in September 2021 and Mr. Cieniewicz's abdominal exam was normal. At the five (5) personal visits with other medical providers and with Dr. Taylor in 2021, Mr. Cieniewicz did not report any gastrointestinal complaints and there were not abnormal gastrointestinal findings. There was no reason for the Defendants to suspect that Mr. Cieniewicz had a stomach ulcer. There was also no contraindication for prescribing NSAIDs for Mr. Cieniewicz. At the time, Dr. Taylor believed that the pain medication would alleviate his reported pain and Dr. Taylor did not believe that the medication would cause Mr. Cieniewicz any harm. In addition, Dr. Ghafourpour never issued a prescription for Naproxen that was filled for or given to Mr. Cieniewicz.

40. Moreover, the gastroenterology specialist who treated Mr. Cieniewicz during his hospital stay beginning on November 4, 2021 found that Mr. Cieniewicz had chronic conditions, a sliding hiatal hernia and peptic stenosis. In his Affidavit, Dr. Taylor explained that these chronic conditions would have existed before Mr. Cieniewicz's incarceration at the Jail and had no relationship to the taking of NSAIDs. In addition, Mr. Cieniewicz did not disclose that he had these two (2) conditions to Dr. Taylor or any medical staff at the Jail. According to Dr. Taylor, it is equally as likely, if not more likely, that Mr. Cieniewicz's duodenal ulcers and ulcerative esophagitis were caused by these two (2) chronic, preexisting gastrointestinal conditions and not by the limited and medically appropriate intake of NSAIDs at the Jail.

41. In her Affidavit, Ms. Jones explained that medications are administered to patients at the Jail regularly. Chronic care and over the counter medications, such as Tylenol, Ibuprofen, and Naproxen, are administered to patients at the Jail twice daily at approximately 4:00 a.m. and 8:00 p.m. by medical staff. While the medical staff makes every effort to adhere to the 4:00 a.m./8:00 p.m. schedule, there is some flexibility in this timing because the medical staff works around the security measures at the Jail. The medication passes may reasonably occur between 3:00 a.m. and 5:00 a.m. and between 8:00 p.m. and 10:00 p.m. In addition, prescribed medications are administered at medication pass and at other times in accordance with the order specifications. If a medication is required by prescription to be taken at a different time or with food, the medication is administered accordingly. Mr. Cieniewicz was allowed to hold Naproxen, received at medication pass, until he received his meal and take it with his meal. Medical staff typically encouraged patients to take NSAID medication with meals.

42. Both Dr. Taylor and Ms. Jones affirmed that the nursing care, including medication administration, provided to Mr. Cieniewicz was timely and appropriate. Medication is administered at the Jail on a timely and regular med pass schedule and, when appropriate, at other times based on the prescription requirements. The medication pass practice at the Jail is standard and reasonable and appropriately addresses the needs of the patients. Both Dr. Taylor and Ms. Jones reviewed Mr. Cieniewicz's medication administration record and affirmed that he was offered his medications reasonably, regularly, and timely over the course of his incarceration.

43. At no time did the Defendants believe that their actions or decisions, or those of the medical staff, would cause harm to Mr. Cieniewicz. To the contrary, the Defendants believe that Mr. Cieniewicz received timely, thorough, and attentive treatment and none of the Defendants had any ill will toward Mr. Cieniewicz.

44. The Affidavits and supporting medical records show that the Defendants' actions were not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). The facts do *not* show that the Defendants knew of a substantial risk of harm to Mr. Cieniewicz from their own actions and intentionally chose to act inappropriately in light of the risk, with indifference as to whether any harm would occur to Mr. Cieniewicz. This case does not "shock the conscience". Finally, the facts do not show that the Defendants alleged deliberately indifferent actions caused Mr. Cieniewicz's claimed injuries. *Coppage v. Mann*, 906 F.Supp. 1025, 1035 (E.D. Va. 1995). Therefore, the Defendants ask that the Complaint be dismissed with prejudice.

WHEREFORE, for the reasons stated in this Brief, the Defendants respectfully request that this Court grant their Motion and dismiss the claims against them in the Complaint, with prejudice.

Respectfully submitted,

WELLPATH, LLC,
ALEX TAYLOR, MD
And
KOUROSH GHAFOURPOUR, DDS

/s/ Angela Boice Axselle
Joel M. McCray, Esquire (VSB# 38116)
Angela Boice Axselle, Esquire (VSB# 43864)
Wimbish Gentile McCray & Roeber PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Phone: 804-655-4830
Fax: 804-980-7819
aaxselle@wgmrlaw.com
jmccray@wgmrlaw.com

**CERTIFICATE**

I hereby certify that on this 4th day of August, 2022, I filed the foregoing *Brief in Support of Motion to Dismiss* electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jeff W. Rosen, Esquire (VSB # 22689)
Pender & Coward, PC
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462-3026
jrosen@pendercoward.com
**Counsel for Defendant Sgt. David Elliott**

And I hereby certify that I have mailed this document by U.S. mail to the following non-filing user:

Thomas Cieniewicz #1191016
HU7 Cell #239B
Greensville Correctional Center
901 Corrections Way
Jarratt, VA 23870
**Plaintiff Pro Se**

/s/ Angela Boice Axselle
Joel M. McCray, Esquire (VSB# 38116)
Angela Boice Axselle, Esquire (VSB# 43864)
Wimbish Gentile McCray & Roeber PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
Phone: 804-655-4830
Fax: 804-980-7819
jmccray@wgmrlaw.com
aaxselle@wgmrlaw.com
**Counsel for Defendants Wellpath, LLC,**
**Alex Taylor, MD and Kourosh Ghafourpour,**
**DDS**