# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## (Alexandria Division)

THOMAS CIENIEWICZ,                              )
                                                )
    Plaintiff,                          )
                                                )     **CIVIL ACTION No. 1:22-**
                                                **)**    **CV-00172-LMB-IDD**
 v.                                             )
                                                )
                                                )     **AMENDED COMPLAINT**
DR. KOUROSH                                     )
GHAFOURPOUR, DDS,                               )
in his individual capacity;                     )
                                                )
ALEX TAYLOR, MD                                 )
in his individual and official                  )
capacities;                                     )
                                                )
WELLPATH, LLC;                                  )
                                                )
PAMELA SMITH, RN, in her official               )
capacity;                                       )
                                                )
BRITTANY JONES, LPN, in her                     )
individual and official capacities;             )
                                                )
GWENDOLYN MCMURRIN, LPN;                        )
                                                )
STEVEN TEEL, LPN;                               )
                                                )
TERRAH FEREBEE, LPN;                            )
                                                )
JACQUELINE WINSTEAD, LPN;                       )
                                                )
MONJIRI MITCHELL, LPN;                          )
                                                )
ONYESHA CUMMINGS, LPN;                          )
                                                )
DANIELLE WILLIAMS, LPN;                         )
                                                )

1

SHERIFF JIM O'SULLIVAN, in his          )
individual and official capacities;     )
                                        )
DAVID ELLIOT,                           )
                                        )
WILLIAM IANNATTI,                       )
                                        )
RICHARD GUTH,                           )
                                        )
WALTER BROOKS, and                      )
                                        )
JUSTIN RODRIGUEZ,                       )
                                        )
            Defendants.                 )

---

### Preliminary Statement

1.      Thomas Cieniewicz was incarcerated at the Chesapeake Correctional Center from October 1, 2019 to June 7, 2022. On November 4, 2021, at approximately 1:55 P.M., while on work detail and sitting in the passenger seat of a van, Mr. Cieniewicz began to feel nauseous and started to sweat profusely. He informed a Deputy that he was not feeling well and then immediately lost consciousness. After being rushed to Chesapeake Regional Medical Center's Emergency Room, it was determined that he was suffering from an upper gastrointestinal bleed ("GI bleed"). An immediate procedure cauterized the bleed and several other ulcerations. Mr. Cieniewicz was fortunate to survive, but he was left with debilitating gastrointestinal problems that continue to cause pain, dramatically limit his mobility, and interfere with his ability to work.

2.      Upon examination in the hospital, it was determined that Mr. Cieniewicz' GI bleed was caused by defendants' over-administration of non-steroidal anti-inflammatory drugs ("NSAIDs") without monitoring.

3.     While incarcerated, Mr. Cieniewicz had experienced intense tooth pain that was left unresolved for nearly six months. Rather than repair or extract the damaged tooth that was causing pain, the defendants administered pain medicine to Mr. Cieniewicz in such quantities and in such a fashion that resulted in his nearly fatal GI bleed.

4.     Mr. Cieniewicz now brings this action for deprivation of his civil rights, pursuant to 42 U.S.C. § 1983, under color of the rights, privileges and immunities secured to him by provisions of the Eighth and Fourteenth Amendments to the United States Constitution. He brings claims for deliberate indifference to serious medical needs under 42 U.S.C. § 1983 based on the delay in providing care and based on defendants' official custom, policy, pattern and/or practice, and failure to train, as well as state law claims for negligence, gross negligence and willful and wanton negligence. Plaintiff seeks compensatory and punitive damages as well as attorney's fees and costs.

5.     This Court has jurisdiction over the constitutional claims in this action pursuant to 28 U.S.C. §§1331 and 1343, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

6.     Venue is proper in this District under 28 U.S.C. § 1391(b), as a substantial part of the acts and omissions giving rise to the unconstitutional practices alleged herein arose in the Eastern District of Virginia.

**Parties**

7.     Plaintiff Thomas Cieniewicz is a 61-year-old citizen of Virginia currently residing in Chesapeake, Virginia. From October 1, 2019 to June 7, 2022, he was incarcerated in Chesapeake Correctional Center ("CCC" or "Jail") in Chesapeake, Virginia.

8.     Defendant Dr. Kourosh Ghafourpour, DDS is a dentist licensed in the Commonwealth of Virginia. At all relevant times, Defendant Ghafourpour, DDS was employed by or contracted with Wellpath to provide dental services to CCC inmates. At all relevant times, Defendant Ghafourpour, DDS was acting within the course of his employment and under color of state law. Defendant Ghafourpour, DDS is sued in his individual capacity.

9.     Defendant Alex Taylor, MD is a physician licensed in the Commonwealth of Virginia. At all times relevant, Defendant Taylor was employed by or contracted with Wellpath as its Medical Director at the Jail. At all relevant times, Defendant Taylor was acting within the course of his employment and under color of state law. Defendant Taylor is sued in his individual and official capacity.

a.     According to a Medical Director job description posted at Wellpath's website, Wellpath Medical Director's duties included but were not limited to:[1]

•     Supervises care given by other professional or non-professional personnel providing instructions as needed.

•     Assists the Health Services Administrator to monitor pharmacy services including formulary compliance, prescribing patterns and dispensing of medication.

•     Provides medical services to patients as scheduled.

•     Provides clinical oversight to the facility medical program, as defined by

---

[1] On information and belief, these job descriptions encompass some of the defendant's job duties.

the NCCHC and ACA standards.

10.    Defendant Wellpath, LLC ("Wellpath") is a limited liability company with its principal office in Nashville, Tennessee, and with operations in Virginia, in particular, at the CCC, where it serves as the Jail's medical services provider. At all relevant times, Defendant Wellpath and its employees acted under color of state law and pursuant to its own policies, practices and customs, which were a driving force behind the constitutional violations asserted herein. At all relevant times, Wellpath had a contract with the City of Chesapeake, under which Wellpath assumed responsibility for the provision of on-site medical services to all inmates at the CCC, including Mr. Cieniewicz, and also for supervising, directing, and controlling health care personnel at the CCC.

a. The City of Chesapeake Request for Proposals No. 91674, dated October 1, 2018, and incorporated into the contract between Wellpath and the City of Chesapeake, conveys that its primary objective was to provide "medical, dental, pharmacy, and mental health services" to inmates in accordance with "standards established by the Virginia Department of Corrections, the American Correctional Association ("ACA"), and the National Commission on Correctional Health Care ("NCCHC")."

11.    Defendant Pamela Smith, RN was at all relevant times an employee of Wellpath working full-time at the CCC as Wellpath's Health Services Administrator. Her actions and omissions at issue here were taken within the scope of her employment with Wellpath. She is sued in her official capacity.

a. According to a Health Services Administrator job description posted at Wellpath's website, a Wellpath Health Services Administrator's duties included but were not limited to:[2]

• Monitor the implementation and effectiveness of procedures and programs.

• Develop, utilize, revise, interpret, and ensure compliance with the Company and facility policies and procedures.

• Oversee recruitment, orientation and performance evaluation of employees.

• Ensure, where available, NCCHC accreditation of the medical program by ensuring the presence of the required level or organizational efficiency and the provision of approved and appropriate medical services.

12.     Defendant Brittany Jones, LPN was at all relevant times an employee of Wellpath working full-time at the CCC as Wellpath's Director of Nursing. Her actions and omissions at issue here were taken within the scope of her employment with Wellpath. She is sued in her individual and official capacity.

a. According to a Director of Nursing job description posted at Wellpath's website, Wellpath Director of Nursing duties included but were not limited to:[3]

• Participates in planning, priority setting and the development of policies and procedures for health care activities that comply with facility and contractual requirements and ACA, NCCHC and State standards.

• Coordinates and monitors orientation, in-service training, and continuing education with the H.S.A.

• Coordinates the development, provision, and evaluation of patient care according to the standards of nursing practice in the state in which the facility is located.

---

[2] On information and belief, these job descriptions encompass some of the defendant's job duties.

[3] On information and belief, these job descriptions encompass some of the defendant's job duties.

- Ensures the practice of nursing is consistent with current standards and is responsible for level of care.

- Supports and participates in evaluation designed to improve work conditions and patient care.

- Evaluates employees' performance and maintains accurate records for annual and provisional evaluations, as well as any others needed.

- Reviews all medication errors and forwards written findings to the H.S.A.

13.     Defendants Gwendolyn McMurrin, LPN, Steven Teel, LPN, Terrah Ferebee, LPN, Jacqueline Winstead, LPN, Monjiri Mitchell, LPN, Onyesha Cummings, LPN, and Danielle Williams, LPN (collectively referred to *in this Paragraph* as "the Foregoing Defendants"), at all relevant times, were employees of Wellpath working full-time at the CCC. As such, the Foregoing Defendants had specific responsibilities and duties to provide for the medical and nursing care of CCC inmates, and for their medicine administration.  At all relevant times, the Foregoing Defendants were acting within the scope of their employment with Wellpath and under color of state law.  The Foregoing Defendants are sued in their individual capacities. According to an LPN job description posted at Wellpath's website, a Wellpath LPN's duties included but were not limited to:[4]

- Implements medical plan through administering medications in accordance with Health Care Practitioner's orders and protocols.

- Administers medications according to proper techniques and procedures.

- Communicates information to ancillary departments using established referral process.

---

[4] On information and belief, these job descriptions encompass some of the defendants' job duties.

- Communicates information to nursing staff, physician, health care unit supervisory personnel and other staff as necessary.

14. Defendant Sheriff Jim O'Sullivan was at all relevant times the duly elected Sheriff of the City of Chesapeake, and in his capacity, operated the CCC. Defendant O'Sullivan was a constitutional officer independent of the City of Chesapeake. Defendant O'Sullivan was the commanding officer of all of his deputies, officers and employees and was responsible for their training, supervision, and conduct. Defendant O'Sullivan was also responsible for promulgating policies and customs regarding the training and supervision of such deputies, officers, and employees. He was responsible by law for those in his custody, for enforcing the regulations of the Chesapeake Sheriff's Office ("CSO"), and for ensuring that personnel under his command obey the laws of the Commonwealth of Virginia and the United States. Defendant O'Sullivan was vested with the responsibility and authority to hire, fire, train, and supervise, to set and enforce policies and procedures, and to provide protection and access to medical care for those committed to his custody, including Mr. Cieniewicz. At all relevant times, Defendant O' Sullivan and his deputies, employees, and agents were acting within the course and scope of their employment and under color of state law. Defendant O'Sullivan is sued in his individual and official capacities.

15. Defendants First Sergeant David Elliot, Deputy William Iannatti, Deputy Richard Guth, Deputy Walter Brooks, and Deputy Justin Rodriguez, at all relevant times, were employees of Defendant O'Sullivan and the Chesapeake Sheriff's Office, acting within the scope of their employment and under color of state law. Defendants Elliot, Iannatti, Guth, Brooks, and Rodriguez worked in the CCC, and are all sued in their individual capacities.

8

A. **Defendants Provide Inadequate Care and are Deliberately Indifferent to Mr. Cieniewicz when he was Suffering from Severe Tooth Pain, a Serious Medical Condition**

16.     On May 18, 2021, Mr. Cieniewicz submitted a Health Services Request ("HSR") indicating that he had been experiencing tooth pain for three weeks after a filling had fallen out. Five days later, he was seen by medical staff and a note was written that a dental visit was scheduled for July.

17.     On June 28, 2021, Mr. Cieniewicz, complaining of dental pain that he rated 5 out of 10, was seen by Bonney, LPN. She recorded "inmate awaiting previously tasked dental eval. Rx ordered at this time." Mr. Cieniewicz was given a prescription for Naproxen 500 mg twice daily. Upon information and belief, the Naproxen was prescribed by Defendant Ghafourpour, DDS.

18.     Mr. Cieniewicz submitted another HSR on July 13, 2021, once again complaining of constant tooth pain that was "sometimes severe." It was responded to by Defendant McMurrin,  LPN, who marked it as a "Non-Urgent" priority. He was given another Naproxen prescription that, upon information and belief, was again prescribed by Defendant Ghafourpour, DDS. Mr. Cieniewicz then submitted yet another HSR on July 24, stating that he was "still having tooth pain and need to renew my script please." No staff member provided a response on the form and no assessment was recorded, but he was provided with another Naproxen prescription, along with a prescription for Tylenol 650 mg. Upon information and belief, the Naproxen was prescribed by Defendant Ghafourpour, DDS; it is unclear who prescribed the Tylenol.

19.    Finally, on August 5, seventy-nine days after first complaining of tooth pain, Plaintiff was seen by Defendant Ghafourpour, DDS. This seventy-nine day delay was in apparent contravention of Wellpath's contract with the City of Chesapeake. The City of Chesapeake Request for Proposals No. 91674, dated October 1, 2018, and incorporated into the contract between Wellpath and the City of Chesapeake, states that "[i]nmates shall be seen for Dental Services as follows:

A)  Immediately

Emergency/Urgent Care: Individuals requiring treatment for the relief of acute oral and maxillofacial conditions characterized by trauma, infection, pain, swelling, or bleeding which are likely to remain acute or worsen without intervention.

B) Within 30 days

Interceptive Care: Individuals requiring early treatment for the control of extensive sub-acute dental or oral pathosis. This level of care should include restoring carious teeth, extractions, long term management of periodontal disease, and endodontic and prosthodontics procedures needed to retain or restore essential masticatory function.

C) Within 60 days

Corrective Care: Individuals requiring treatment for chronic dental and oral pathosis and for the restoration of essential function."

20.    At the August 5 appointment, Mr. Cieniewicz expected that his tooth would be extracted. However, he was informed by Defendant Ghafourpour, DDS that the visit was only an annual checkup. Mr. Cieniewicz explained to Defendant Ghafourpour, DDS how much pain he was in and requested that the tooth be extracted, but Defendant Ghafourpour, DDS replied that he was not equipped to do that at the time and that Mr. Cieniewicz would be seen at a later date.

At this appointment, Mr. Cieniewicz asked Defendant Ghafourpour, DDS why his health requests were being ignored, but Defendant Ghafourpour, DDS did not respond.

21.     Following the August 5 checkup, Mr. Cieniewicz continued to experience severe pain. He submitted an HSR on September 7, complaining of "considerable pain from my tooth" and requesting that the tooth be extracted. Defendant Teel, LPN processed that HSR but he failed to record any assessment, such as Plaintiff's blood pressure, pulse, or the priority level of the request. Mr. Cieniewicz received another prescription for Naproxen that, upon information and belief, was written by Defendant Ghafourpour, DDS.

22.     On September 16, Mr. Cieniewicz was seen by Defendant Cummings, LPN, who observed "decay present to back teeth of lower left jaw" and recorded that Mr. Cieniewicz was requesting a dental appointment and complaining of **pain measuring "8" out of "10."** (emphasis added). She referred him to dental "for further evaluation" but took no other steps to expedite his treatment, despite the marked increased in his level of pain and the clear insufficiency of his pain medication. Upon information and belief, Defendant Taylor, MD then wrote an open ended Naproxen prescription for Mr. Cieniewicz.

23.     On October 6, Defendant Williams, LPN wrote a medical note that Mr. Cieniewicz requested Tylenol to be added to his medication because of "break through pain that is not managed by current medications alone." She wrote that he was "awaiting evaluating by dentist" even though it had been nearly a month since he indicated that he was experiencing pain measuring 8 out of 10.  The Tylenol prescription written by Defendant Taylor, MD called for it to be taken with food.

24.     On October 29, Mr. Cieniewicz submitted yet another HSR, seeking renewal of his Tylenol. The medication was renewed by Defendant Taylor, MD.

25.     Despite his complaints of pain and constant requests for dental assistance, Mr. Cieniewicz' tooth pain continued to be ignored. He was not seen by a dentist until November 9, when his tooth was finally extracted.

26.     From the date he first complained of tooth pain until the date the tooth was finally extracted, Mr. Cieniewicz waited one hundred and seventy-five days. His extraction was ninety-six days after his annual checkup with Defendant Ghafourpour, DDS, and he waited fifty-four days to see Defendant Ghafourpour, DDS following his complaint of tooth pain that measured 8 out of 10 on the pain scale. All such delays were violative of Wellpath's contract with the City of Chesapeake, negligent, and evidence of deliberate indifference to Mr. Cieniewicz' serious medical needs.

27.     On multiple occasions from June through August, 2021, Mr. Cieniewicz made requests to various deputies and nurses to file a grievance in connection with his failure to be seen by a dentist, but he was told time and again that it was a non-grievable matter. On September 23, his various attempts at receiving care having been rebuffed, Mr. Cieniewicz spoke to Defendant First Sergeant Elliott and asked if he could assist him in being seen by the dentist. Defendant Elliot responded that, "with a phone call" he could have Mr. Cieniewicz in the dentist's chair "the next day," as he had just done for another inmate. However, Defendant Elliot, despite knowledge of Mr. Cieniewicz' severe pain and despite his representations, did not intervene to assist him.

**B. Defendants Taylor, MD and Ghafourpour, DDS Fail to Appropriately Monitor Plaintiff's Naproxen Usage**

28.     Beginning on or about June 30, 2021, and continuing until on or about November 4, 2021, Mr. Cieniewicz received prescriptions for Naproxen from both Defendants Taylor, MD and Ghafourpour, DDS.

29.     The development of ulcers and upper GI bleeds are known to be common possible side effects of prolonged ingestion of NSAIDs such as Naproxen.

30.     Neither Defendant Taylor, MD nor Defendant Ghafourpour, DDS ever reviewed the effectiveness of the Naproxen treatment to determine if it was effective in treating Mr. Cieniewicz' pain. In fact, Mr. Cieniewicz was consistently telling medical staff that the medication was not effective in managing his pain.

31.     Medical records indicate that although Plaintiff received yearly medical assessments in 2019, 2020, and 2022, he did not receive any such assessment in 2021.

32.     Despite the commonly known risks of prolonged intake of NSAIDs and the fact that Mr. Cieniewicz had been taking Naproxen for several months (and Ibuprofen for many months before that), Defendant Taylor, MD and Defendant Ghafourpour, DDS nevertheless continued prescribing Naproxen to Mr. Cieniewicz without monitoring him for signs that he might be suffering from potential side effects.

33.     For example, neither Defendants Taylor, MD nor Ghafourpour, DDS ever took any blood work to determine whether the Naproxen was causing inflammatory changes, never

examined any changes in kidney or liver function, and never examined whether the Naproxen use was causing elevated blood pressure. Neither undertook any preventive screening, despite Mr. Cieniewicz' age and known history of Gastroesophageal reflux disease ("GERD").[5]

34.    Moreover, as set forth below, Wellpath, its employees, and employees of the Chesapeake Sheriff's Office improperly administered medicines to Mr Cieniewicz, causing him additional harm.

**C. The CCC and Wellpath's Medicine Administration's Policies, Practices and Customs Cause Harm to Plaintiff**

35.    For the bulk of his incarceration, Mr. Cieniewicz was housed in Building 18, which is a newer addition to the CCC that holds non-violent inmates who were a low-security risk, along with workforce inmates such as Mr. Cieniewicz. He was moved there on or about May of 2020 and was housed there for virtually the remainder of his time at the CCC.

36.    In Building 18, prescribed medications were administered at medication pass ("med pass"), generally twice per day. Medications were dispensed by Wellpath LPNs and aided by employees of the Chesapeake Sheriff's Office. On information and belief, inmates are supposed to be allowed to hold medications like Tylenol and Naproxen to take later with food.

37.    Wellpath's response to Chesapeake's Request for Proposals, dated November 14, 2018 and incorporated into the contract between Wellpath and the City of Chesapeake, explicitly states that Wellpath "tailors medication pass for the CCC to ensure the timeliness and accuracy

---

[5] At his CCC medical intake, Mr. Cieniewicz made known that he had GERD and that the CCC could obtain his prior medical records from Virginia Beach Jail. It is unclear whether Defendants Taylor, MD or Dr. Ghafourpour, DDS received the records, reviewed them, or followed up to make sure they had Mr. Cieniewicz' full medical history.

of the process, **coordinating with detention staffing and meal times** to ensure accurate and effective medication administration…." (Emphasis added).

38.     However, the custom at the CCC was far different than what was called for in the contract. The practice in Building 18 was that administering nurses and accompanying deputies would force inmates to take medicine that they should have been allowed to hold to take later with food.  Some deputies would shine a flashlight in Mr. Cieniewicz' mouth to ensure that medications were swallowed. This practice was widespread; deputies consistently forbid inmates from holding medicines for later. Mr. Cieniewicz witnessed many inmates being disciplined for trying to do so.

39.     Naproxen is indicated to be taken with food. Moreover, the Tylenol prescription that Mr. Cieniewicz received on or about October 7 called for it to be taken with food.

40.     Medication Administration Records identify LPNs Gwendolyn McMurrin, Steven Teel, Terrah Ferebee, Jacqueline Winstead, Monjiri Mitchell, Onyesha Cummings, and Danielle Williams as having been assigned to administer Naproxen and/or Tylenol to Mr. Cieniewicz in July through November 2021.

41.     The CSO employees who consistently made Mr. Cieniewicz swallow medications and would not permit him to hold to take later with food included, but were not limited to, Defendants Iannatti, Guth, Brooks, and Rodriguez. Mr. Cieniewicz witnessed Defendants Iannatti and Guth doling out punishment to inmates who held medicines for later, such as reclassing them to an undesirable block or dorm.

42.     Despite policies and procedures permitting inmates to keep medications on person for self-administration under some circumstances, defendants maintained and permitted a custom

and practice of forcing inmates to take medications when convenient to operations rather than when medically indicated. The defendants' dosing schedule forced Mr. Cieniewicz to take too much medication in too short intervals and without food, which, over time, led to his GI bleed and subsequent ongoing injuries.

43.    Medicine Administration Records indicate that Mr. Cieniewicz frequently received multiple doses of Naproxen within a time frame significantly shorter than the standard 8-12 hours per dose. In the two months preceding his hospitalization, plaintiff was dispensed two doses within one hour at least twenty-two times, including on five occasions the week before his hospitalization.

44.    Moreover, Medicine Administration Records indicate that, in the two months immediately preceding Mr. Cieniewicz' hospitalization, that rather than receiving his prescribed dose of 500 mg twice a day, he received that dosage three times per day on at least ten separate dates.  On various other dates, he was only offered the Naproxen on one med pass during the day.

45.    Plaintiff once heard Bonney, LPN, a former Wellpath employee, state:  "[t]he way we give medications is going to get someone killed." Upon information and belief, that fear was one of the reasons Bonney, LPN quit working at the CCC. Mr. Cieniewicz frequently heard Wellpath nurses complaining that Wellpath should have another shift to properly administer medications in Building 18.

46.    Plaintiff tried to file grievances regarding the inappropriate administering of medications but was again told that it not a grievable matter.

47.    On November 12, after he returned to the CCC following his hospitalization, Mr. Cieniewicz saw Defendant Taylor, MD and discussed with him how medicines were being

improperly administered, and that he wanted to have a KOP ("Keep on Person") status so that he could take the medicines on a more regular basis with food. During this conversation, he explained that the nurses and deputies would make him swallow pills as opposed to permitting him to save medicine to take later with food.

48.     On November 13, Mr. Cieniewicz submitted an HSR asking for an update on his request to have KOP status. The November 16 response by an LPN with an indecipherable signature indicated that no changes would be made, and he was not given KOP status until December 2. Upon information and belief, despite the conversation Mr. Cieniewicz had with Defendant Taylor, MD, no changes were made to the medicine administration practices at the CCC.

49.     In April, 2022, Mr. Cieniewicz held Tylenol pills to take later with food, as had been medically indicated. Defendant Iannatti discovered the pills, brought it to Defendant McMurrin, LPN's attention, and attempted to have him punished.

**D. Plaintiff Suffers a GI Bleed and Almost Dies**

50.     On November 4, 2021, at approximately 1:55 P.M., while on work detail and sitting in the passenger seat of a van**,** Mr. Cieniewicz began to feel nauseous and started to sweat profusely. He informed Deputy Olsen that he was not feeling well and then immediately lost consciousness.

51.     When Mr. Cieniewicz came to, he was lying on the street with a defibrillator attached to his chest. He was rushed by ambulance to Chesapeake Regional Medical Center's ("CRMC") Emergency Room. After several tests, it was determined that he was suffering from a

life threatening upper GI bleed. Mr. Cieniewicz was admitted to the hospital and scheduled for an immediate procedure where doctors cauterized the bleed and several other ulcerations.

52.     Following the procedure, a CRMC physician informed Mr. Cieniewicz that, after reviewing his medical records from CCC, that it was apparent that the prolonged Naproxen use had caused a hole to form in his Duodenum, and that only Deputy Olsen's quick actions had saved his life.   The physician further stated that he had rarely seen such damage and that Naproxen should only be administered in two week doses and taken with food. The physician added that Mr. Cieniewicz would have to take a medicine, Protonix for the rest of his life and that he would need to thereafter abstain from acidic foods.


**E. Plaintiff Returns to the Jail**

53.     Plaintiff was discharged from the CRMC on November 8 and his discharge papers included instructions to "follow with gastroenterology in 1-2 weeks." However, he was never provided with a follow-up appointment in accordance with those instructions.

54.     Mr. Cieniewicz' discharge papers contained prescriptions for various medications and also specific instructions to stop taking Naproxen and any other NSAIDs. Upon his return to the Jail, he was held in medical block and quarantine block for several days each. Both blocks are in the main jail building, and there, inexplicably, nurses continued to attempt to dispense Naproxen to Mr. Cieniewicz, in clear contravention of the CRMC order. Despite multiple efforts at explaining that he was not supposed to be taking any more Naproxen, nurses continued to attempt to administer him the medicine.

55.     After his first med pass upon returning to the Jail, Mr. Cieniewicz was so concerned that the CCC would not follow the recommendations of his post-surgical care that on November 9, he submitted an HSR requesting "could I please get a medical supervisor to come and talk to me about in regards to my aftercare and prescriptions and dosage."

56.     Mr. Cieniewicz was returned to Building 18 on or about November 19, and for several more days, Defendant Williams, LPN attempted to administer him Naproxen despite him telling her that it was not to be prescribed. Finally, on or about November 22, Wellpath and the CCC stopped attempting to administer him Naproxen.

57.     Upon returning to CCC after his hospitalization, Mr. Cieniewicz, though continuing to suffer substantial pain, was reluctant to seek medical help as he feared that being perceived as a complainer would lead him to be transferred to the regional jail with a horrid reputation, as he had witnessed happen to other inmates. In fact, five months after Mr. Cieniewicz filed his *pro se* complaint that initiated this action, and only forty-nine days before his release date, he was transferred to the Greensville Correctional Center, seemingly in retaliation for having filed his lawsuit. That transfer prevented Mr. Cieniewicz from attending any reentry programs.

58.     Since being released from Greensville Correctional Center on or about July 26, 2022, Mr. Cieniewicz has continued to suffer from severe gastrointestinal pain and ongoing complications requiring close medical supervision and treatment. Two days after his release, he was admitted to the Chesapeake Regional Medical Center with abdominal pain and blood in his stool. He spent eight days there and was diagnosed with Colitis. As a result of Defendants'

conduct, Mr. Cieniewicz is effectively disabled. Consequently, he has been unable to work in his previous occupation as a roofer, despite multiple employment offers and opportunities.

## COUNT I. 42 U.S.C. §1983 Claim

**A. Against Defendants Ghafourpour, DDS, Cummings, LPN, and Elliot for Deliberate Indifference to Medical Needs (Delay in Dental Treatment)**

59.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

60.     As described above, Defendants Ghafourpour, DDS, Cummings, LPN, and Elliot (collectively referred to *in this Count* as "the Foregoing Defendants") failed to ensure that Mr. Cieniewicz received prompt and adequate medical care relating to his dental concerns.

61.     The actions of the Foregoing Defendants exhibited deliberate indifference to Mr. Cieniewicz' serious medical needs, were performed under color of state law, and violated Mr. Cieniewicz' rights under the Eighth and Fourteenth Amendments to the United States Constitution.

62.     As a direct and proximate result of the actions of the Foregoing Defendants in refusing to assist Mr. Cieniewicz, disregarding his requests for treatment and failing to ensure that he received prompt and constitutionally adequate medical care, Plaintiff's treatment was further delayed, causing him to suffer increased pain, discomfort, and mental anguish.

63.     By failing to provide Mr. Cieniewicz with prompt and constitutionally adequate medical care and by failing to timely follow up on his treatment, the Foregoing Defendants willfully disregarded an excessive risk to Mr. Cieniewicz' health and safety and deliberately

subjected him to pain, suffering and mental anguish, thereby violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

64.    The Foregoing Defendants' actions and omissions constitute a willful, wanton, reckless, and conscious disregard of Mr. Cieniewicz' rights, by reason of which he is entitled to recover punitive damages.

65.    The Foregoing Defendants' violations of the Eighth and Fourteenth Amendments to the U.S. Constitution establish a cause of action, pursuant to 42 U.S.C. § 1983, for monetary relief consisting of compensatory damages and punitive damages, attorney's fees and costs.

**B. Against Defendants Ghafourpour, DDS and Taylor, MD for Deliberate Indifference to Medical Needs (Overprescription of Naproxen without Supervision)**

66.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

67.    As described above, Defendants Ghafourpour, DDS and Taylor, MD failed to properly monitor Mr. Cieniewicz' tolerance of long-term, high-dose Naproxen, resulting in a failure to diagnose risk factors for the GI bleed he ultimately experienced.

68.    The actions of Defendants Ghafourpour, DDS and Taylor, MD exhibited deliberate indifference to Mr. Cieniewicz' serious medical needs, were performed under color of state law, and violated Mr. Cieniewicz' rights under the Eighth and Fourteenth Amendments to the United States Constitution.

69.    As a direct and proximate result of the actions of Defendants Ghafourpour, DDS and Taylor, MD in failing to monitor Mr. Cieniewicz' excessive Naproxen usage, Mr.

Cieniewicz' risk for adverse drug reactions rose considerably and he was subjected to pain and suffering and mental anguish.

70.     By failing to provide Mr. Cieniewicz with constitutionally adequate medical care and by failing to monitor his excessive Naproxen usage, Defendants Ghafourpour, DDS and Taylor, MD willfully disregarded an excessive risk to Mr. Cieniewicz' health and safety and deliberately subjected him to pain and suffering and mental anguish, thereby violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

71.     Defendants Ghafourpour, DDS and Taylor, MD's actions and omissions constitute a willful, wanton, reckless, and conscious disregard of Mr. Cieniewicz' rights, by reason of which he is entitled to recover punitive damages.


**C. Against Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN , Mitchell, LPN, Cummings, LPN, Williams, LPN, Iannatti, Guth, Brooks, and Rodriguez for Deliberate Indifference to Medical Needs (Improper Medicine Administration)**

72.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

73.     At all relevant times, Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, Williams LPN, Iannatti, Guth, Brooks, and Rodriguez (collectively referred to this *in this Count* as the "Foregoing Defendants") acted or failed to act under color of state law.

74.     As described above, the Foregoing Defendants improperly administered medicine to Mr. Cieniewicz in response to his serious medical needs.

75.     The Foregoing Defendants engaged in this injurious conduct with deliberate indifference to Mr. Cieniewicz' health and safety, thereby placing him in substantial risk of serious harm.

76.     The acts and omissions of the Foregoing Defendants were conducted within the scope of their official duties and employment.

77.     As a direct and proximate result of the actions of the Foregoing Defendants in improperly administering medicines, Mr. Cieniewicz' risk for adverse drug reactions rose considerably and he was subjected to pain and suffering and mental anguish.

78.     By failing to provide Mr. Cieniewicz with constitutionally adequate medicine administration, the Foregoing Defendants willfully disregarded an excessive risk to his health and safety and deliberately subjected him to pain and suffering and mental anguish, thereby violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

79.      The acts and omissions of the Foregoing Defendants constitute a willful, wanton, reckless, and conscious disregard of Mr. Cieniewicz' rights, by reason of which he is entitled to recover punitive damages.

**D. Against Defendants Wellpath and Defendants O'Sullivan, Taylor, MD, Jones, LPN, and Smith, RN in their official capacities for Deliberate Indifference to Medical Needs (Official Custom, Policy, Pattern and/or Practice Claim/Failure to Train Claim)**

80.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

81.     This claim is brought against Wellpath and against the policy makers of Wellpath and of the Jail in their official capacities, respectively, Defendants Taylor, MD and Smith, RN , and Defendant O' Sullivan.

82.     Pursuant to Va Code § 53.1-116.2, "the Sheriff of each county or city shall be the keeper of the jail thereof." Further, the Virginia Board of Corrections has an entire chapter of administrative regulations dedicated to Minimum Standards for Jail and Lockups. The second regulation, directly following the definitions for the chapter, is 6 VAC 15-40-20, entitled "Responsibility." It plainly states, "[t]he primary responsibility for application of these standards shall be with the sheriff or chief executive officer of the jail or lockup." Accordingly, Sheriff O' Sullivan is the statutorily defined final policymaking decision maker in the daily operation of the Jail.

83.     During the relevant time period, through their actions and inactions as set forth above, Defendants Wellpath, Sheriff O'Sullivan, Taylor, MD and Smith, RN, in their official capacities, acting under color of state law, and pursuant to an official custom, policy, pattern and/ or practice, operated the CCC and/or the provision of healthcare services at the CCC in a manner that posed a substantial risk to the health and safety of its inmates, including Mr. Cieniewicz. Specifically, Mr. Cieniewicz' constitutional rights were violated by both Wellpath and the CCC's unreasonable and inadequate formal medicine administration policies in Building 18, along with the manner in which those policies were implemented by custom and practice.

84.     Moreover, Defendants Wellpath, Sheriff O'Sullivan, Taylor, MD, Jones, LPN, and Smith, RN, in their official capacities, acting under color of state, failed to sufficiently train their employees to properly administer medications. As a result, the nurses and deputies who

administered medications to Mr. Cieniewicz consistently enforced dosing schedules inconsistent with prescribing orders and failed to allow him to save for later certain medicines that were intended to be taken with food, despite being informed of their error. Such inadequacies in training heightened Mr. Cieniewicz' risk for adverse drug reactions and contributed to his GI bleed and later gastrointestinal illnesses.

85.    The defects in the administration of medications to Mr. Cieniewicz set forth herein reflect the grossly negligent failure of Defendants Wellpath, Sheriff O'Sullivan, Taylor MD, Jones, LPN, and Smith, RN, in their official capacities, to discharge their professional, contractual and constitutional obligations to train and provide quality assurance review of Wellpath and CCC staff. These defects also manifest the deliberate indifference of Defendants Wellpath, Sheriff O'Sullivan, Taylor, MD, Jones, LPN, and Smith, RN, in their official capacities, to the foreseeable consequences of these training failures.

86.    The actions and omissions of Defendants Wellpath and Defendants O'Sullivan, Taylor, MD, Jones, LPN, and Smith, RN, in their official capacities constitute a willful, wanton, reckless, and conscious disregard of Mr. Cieniewicz' rights, by reason of which he is entitled to recover punitive damages.

## COUNT II: NEGLIGENCE

**A. Against all Defendants**

87.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

88.     Defendants Taylor, M.D, Ghafourpour, DDS, Wellpath, Smith, RN, Jones, LPN, McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, Williams, LPN, O'Sullivan, Elliot, Iannatti, Guth, Brooks, and Rodriguez (collectively referred to *in this Count* as "the Foregoing Defendants"), had, among other duties, duties to exercise reasonable care with regard to Mr. Cieniewicz, duties to obtain or provide prompt medical care for Mr. Cieniewicz, and duties to appropriately dispense prescription medicine; however, the Foregoing Defendants breached these duties.

89.     Virginia imposes a duty of care on medical staff to protect incarcerated persons' health and safety.

90.     Defendants Wellpath, Taylor, MD, Ghafourpour, DDS, Smith, RN, Jones, LPN, McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings LPN, and Williams, LPN owed duties to Mr. Cieniewicz to treat him in accordance with recognized and acceptable standards of medical care, health care, and/or nursing care and treatment; however, these Defendants breached the standard of care.

91.     As described throughout this Amended Complaint, the Foregoing Defendants breached duties owed to Mr. Cieniewicz and these breaches constituted negligence.

92.      As a direct and proximate cause of the negligence of the Foregoing Defendants, Mr. Cieniewicz sustained damages, including pain and suffering, mental anguish, loss of future earnings, and future medical expenses.

93.     The Foregoing Defendants' negligence establishes causes of action for monetary relief consisting of compensatory damages and costs to the Plaintiff.

**B**. **Against Defendants Wellpath and O'Sullivan in his Individual Capacity (*Respondeat Superior* Liability)**

94.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

95.     At all relevant times, Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, and Williams, LPN were employees of Wellpath and acting in the course and scope of their employment with Wellpath.

96.     Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, and Williams, LPN owed various duties to Mr. Cieniewicz to treat him in accordance with recognized and acceptable standards of medical care, health care, and/or nursing care and treatment; however, these Defendants breached the standard of care.

97.     Defendant Wellpath is vicariously liable for the negligence of Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, and Williams, LPN through the doctrine of *respondeat superior*.

98.     At all relevant times, Defendants Elliot, Iannetti, Guth, Brooks, and Rodriguez, were employees of Defendant Sheriff O'Sullivan and the Chesapeake Sheriff's Office and acting in the course and scope of their employment with Defendant Sheriff O'Sullivan and the Chesapeake Sheriff's Office.

99.     Defendants Elliot, Iannatti, Guth, Brooks, and Rodriguez, had, among other duties, duties to exercise reasonable care with regard to Mr. Cieniewicz; however, these Defendants breached such duties.

100.    Defendant O'Sullivan is vicariously liable for the negligence of Defendants Elliot, Iannatti, Guth, Brooks, and Rodriguez through the doctrine of *respondeat superior*.

101.    The vicarious liability of Defendants Wellpath and O'Sullivan for the negligence of their employees establishes causes of action for monetary relief consisting of compensatory damages and costs to the Plaintiff.

## COUNT III: GROSS NEGLIGENCE

**B.  Against all Defendants**

102.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

103.    Defendants Taylor, M.D, Ghafourpour, DDS, Wellpath, Smith, RN, Jones, LPN, McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, Williams, LPN, O'Sullivan, Elliot, Iannatti, Guth, Brooks, and Rodriguez (collectively referred to *in this Count* as "the Foregoing Defendants"), had, among other duties, duties to exercise reasonable care with regard to Mr. Cieniewicz, duties to obtain or provide prompt medical care for Mr. Cieniewicz, and duties to appropriately dispense prescription medicine; however, the Foregoing Defendants breached these duties.

104.    Defendants Wellpath, Taylor, MD, Ghafourpour, DDS, Smith, RN, Jones, LPN McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings LPN, and Williams, LPN owed duties to Mr. Cieniewicz to treat him in accordance with recognized and acceptable standards of medical care, health care, and/or nursing care and treatment; however, these Defendants breached the standard of care.

105.    The Foregoing Defendants were grossly negligent in that their actions and inactions, described throughout this Amended Complaint, were deliberately indifferent to Mr. Cieniewicz' medical needs and demonstrated utter disregard of prudence amounting to complete neglect of his safety and well-being.

106.    The Foregoing Defendants were aware of their conduct and, from their knowledge of existing circumstances and conditions, were aware that their conduct would result in injury to Mr. Cieniewicz.

107.    As a direct and proximate cause of the gross negligence of the Foregoing Defendants, Mr. Cieniewicz sustained damages, including pain and suffering, mental anguish, loss of future earnings, and future medical expenses.

108.     The Foregoing Defendants' gross negligence establishes causes of action for monetary relief consisting of compensatory damages and costs to the Plaintiff.

## C. Against Defendants Wellpath and O'Sullivan in his Individual Capacity (*Respondeat Superior* Liability)

109.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

110.    At all relevant times, Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, and Williams, LPN were employees of Wellpath and acting in the course and scope of their employment with Wellpath.

111.    Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, and Williams, LPN owed various duties to Mr. Cieniewicz to treat him in

accordance with recognized and acceptable standards of medical care, health care, and/or nursing care and treatment; however, these Defendants breached the standard of care.

112.    Defendant Wellpath is vicariously liable for the gross negligence of Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, and Williams, LPN through the doctrine of *respondeat superior*.

113.    At all relevant times, Defendants Elliot, Iannatti, Guth, Brooks, and Rodriguez were employees of Defendant Sheriff O'Sullivan and the Chesapeake Sheriff's Office and acting in the course and scope of their employment with Defendant Sheriff O'Sullivan and the Chesapeake Sheriff's Office.

114.    Defendants Elliot, Iannatti, Guth, Brooks, and Rodriguez, had, among other duties, duties to exercise reasonable care with regard to Mr. Cieniewicz; however, these Defendants breached such duties.

115.    Defendant O'Sullivan is vicariously liable for the gross negligence of Defendants Elliot, Iannatti, Guth, Brooks, and Rodriguez through the doctrine of *respondeat superior*.

116.    The vicarious liability of Defendants Wellpath and O'Sullivan for the gross negligence of their employees establishes causes of action for monetary relief consisting of compensatory damages and costs to the Plaintiff.

## COUNT IV: WILLFUL AND WANTON NEGLIGENCE

### A.  Against all Defendants

117.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

118.    Defendants Taylor, M.D, Ghafourpour, DDS, Wellpath, Smith, RN, Jones, LPN, McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, Williams, LPN, O'Sullivan, Elliot, Iannatti, Guth, Brooks, and Rodriguez (collectively referred to *in this Count* as "the Foregoing Defendants"), had, among other duties, duties to exercise reasonable care with regard to Mr. Cieniewicz, duties to obtain or provide prompt medical care for Mr. Cieniewicz, and duties to appropriately dispense prescription medicine; however, the Foregoing Defendants breached these duties.

119.    Defendants Wellpath, Taylor, MD, Ghafourpour, DDS, Smith, RN, Jones, LPN, McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, and Williams, LPN owed duties to Mr. Cieniewicz to treat him in accordance with recognized and acceptable standards of medical care, health care, and/or nursing care and treatment; however, these Defendants breached the standard of care.

120.    The Foregoing Defendants were willfully and wantonly negligent in that they acted, or failed to act, in the manner described throughout this Amended Complaint, consciously in disregard of Mr. Cieniewicz' rights. In addition, the Foregoing Defendants acted, or failed to act, in the manner described throughout this Amended Complaint, with a reckless indifference to the consequences to Mr. Cieniewicz when they were aware of their conduct and also aware, from their knowledge of existing circumstances and conditions, that their conduct would result in injury to Mr. Cieniewicz.

121.    As a direct and proximate cause of the willful and wanton negligence of the Foregoing Defendants, Mr. Cieniewicz sustained damages, including pain and suffering, mental anguish, loss of future earnings, and future medical expenses.

122.    The Foregoing Defendants' willful and wanton negligence establishes causes of action for monetary relief consisting of compensatory damages and costs to the Plaintiff. Also, the foregoing willful and wanton negligence claim supports, and Plaintiff seeks, the imposition of punitive damages.

**B. Against Defendants Wellpath and O'Sullivan in his Individual Capacity (*Respondeat Superior* Liability)**

123.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

124.    At all relevant times, Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, and Williams, LPN were employees of Wellpath and acting in the course and scope of their employment with Wellpath.

125.    Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, and Williams, LPN owed various duties to Mr. Cieniewicz to treat him in accordance with recognized and acceptable standards of medical care, health care, and/or nursing care and treatment; however, these Defendants breached the standard of care.

126.    Defendant Wellpath is vicariously liable for the willful and wanton negligence of Defendants McMurrin, LPN, Teel, LPN, Ferebee, LPN, Winstead, LPN, Mitchell, LPN, Cummings, LPN, and Williams, LPN through the doctrine of *respondeat superior*.

127.    At all relevant times, Defendants Elliot, Iannatti, Guth, Brooks, and Rodriguez were employees of Defendant Sheriff O'Sullivan and the Chesapeake Sheriff's Office and acting

in the course and scope of their employment with Defendant Sheriff O'Sullivan and the Chesapeake Sheriff's Office.

128.    Defendants Elliot, Iannatti, Guth, Brooks, and Rodriguez, had, among other duties, duties to exercise reasonable care with regard to Mr. Cieniewicz; however, these Defendants breached such duties.

129.    Defendant O'Sullivan is vicariously liable for the willful and wanton negligence of Defendants Elliot, Iannetti, Guth, Brooks, and Rodriguez through the doctrine of *respondeat superior*.

130.    The vicarious liability of Defendants Wellpath and O'Sullivan for the willful and wanton negligence of their employees establishes causes of action for monetary relief consisting of compensatory damages and costs to the Plaintiff. Also, the foregoing willful and wanton negligence claim supports, and Plaintiff seeks, the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a. ENTER JUDGMENT holding the Defendants liable for damages arising from Defendants' constitutional, statutory and common law violations, including for pain and suffering, mental anguish, future medical expenses, and loss of future earnings, in an amount to be determined at trial;

b. AWARD Plaintiff his costs and reasonable attorneys' fees;

c. AWARD Plaintiff punitive damages appropriate to the proof at trial; and

d. GRANT such other and further relief as is just.

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury for all claims presented.

Dated: September 22, 2022                    Respectfully submitted,

/s/ Daniel H. Goldman
Daniel H. Goldman, #82144
Law Office of Daniel Goldman, PLLC
421 King Street, Suite 505
Alexandria, Virginia 22314
Tel: (202) 677-5709
Fax: (833) 523-2310
dan@dangoldmanlaw.com

/s/ Evan M. Goldberg
Evan M. Goldberg (*pro hac vice)*
The Law Office of Evan M. Goldberg
5423 32nd St NW
Washington, DC 20015
Tel: (504) 717-5005
egoldberg.esq@gmail.com